UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------X
ANTHONY CHOQUETTE and STEPHANIE      :
PEDROZA,                             :
                     Plaintiffs,     :
                                     :        15-CV-9338 (VEC)
         -against-                   :
                                     :        MEMORANDUM
MOTOR INFORMATION SYSTEMS, INC. and  :        OPINION & ORDER
HEARST BUSINESS PUBLISHING, INC.,    :
                                     :
                     Defendants.     :
-------------------------------------------------------------X
```

VALERIE CAPRONI, United States District Judge:

Plaintiffs Anthony Choquette and Stephanie Pedroza are independent distributors for

Motor Information Systems ("Motor"), which is an operating division of Defendant Hearst

Business Publishing, Inc. that publishes manuals regarding vehicle service and repairs.[1]

Historically, Motor's products were physical manuals; more recently it has transitioned many of

its products to online manuals. When Motor discontinued one of the online manuals that

Plaintiffs had been authorized to distribute, Plaintiffs sued, alleging breach of contract,

"Deceit/Misrepresentation," and "Intentional Interference with Advantageous Business

---

[1]     Motor is not a separate legal entity, and Hearst Business Publishing, Inc. is not aware of any incorporated
entity known as Motor Information Systems, Inc. Defendant's Rule 56.1 Statement of Facts ("Def. 56.1 Stmt.") n.1
(Dkt. 60). There is, therefore, only one Defendant in this action—Hearst Business Publishing, Inc.—and the Clerk
of Court is respectfully directed to remove Motor Information Systems, Inc. as a Defendant in this action and to
change the case caption accordingly. Nevertheless, in this Opinion, the Court will use "Motor" to refer to the
Defendant, as that is the operating division with which Plaintiffs interacted.

Relations."[2]  Defendant has now moved for summary judgment ("the Motion").[3]  Plaintiffs have

failed to raise a genuine question of material fact as to any of their claims.  Accordingly,

Defendant's Motion is GRANTED.

## BACKGROUND[4]

Motor sells vehicle service and repair manuals.  It does so both through direct sales and

through independent distributors.  Def. 56.1 Stmt. ¶¶ 1-4.  Anthony Choquette and Stephanie

Pedroza are independent distributors, each in the business of selling such manuals in or around

Massachusetts and Utah, respectively.  *Id.* ¶¶ 5-8.  Choquette's and Pedroza's "Independent

Sales Distribution Agreements" ("Agreements")[5] authorize them to sell Repair Manuals

---

[2]  Because "Deceit/Misrepresentation" and "Intentional Interference with Advantageous Business Relations," Plaintiffs' second and fourth counts, are not clearly cognizable causes of action under New York law, the Court construes the former as a claim for fraud in the inducement of a contract and the latter as a claim for tortious interference with business relations.

The Complaint also alleged "Negligent Interference with Advantageous Business Representation" and "Intentional Infliction of Emotional Distress," Plaintiffs' third and fifth counts.  Because New York law does not recognize negligent interference with contract as a tort, *PAB Aviation, Inc. v. United States*, 169 F. App'x 61, 63 n.2 (2d Cir. 2006), Plaintiffs' third count is dismissed.  Plaintiffs also abandoned the intentional infliction of emotional distress claim on the record at a pretrial conference.  *See* Bishop Decl. Ex. N, Tr. 5:7-15 (Dkt. 61-14) ("[IIED] was a count in the complaint that your Honor surmised correctly at the first conference would go by the wayside.").  Accordingly, Plaintiffs' fifth count is dismissed.

[3]  The Court uses the following abbreviations: Complaint is "Compl."(Dkt. 1); Defendant's Memorandum in Support of Motion for Summary Judgment is "Def. Mem." (Dkt. 59); Plaintiffs' Memorandum of Law in Opposition to Motion for Summary Judgment is "Pls. Opp." (Dkt. 67).

[4]  These facts are drawn from the Defendant's Rule 56.1 Statement of Facts, as well as the contracts at issue in this case.  Plaintiffs have submitted an Opposition to Movants' Statement of Undisputed Facts ("Pls. 56.1 Opp.") (Dkt. 67-2) that objects to certain facts.  In large part, however, Plaintiffs' objections are either unsupported or are based on provably false assertions.  Several objections deny the existence of contractual provisions that are clearly written into the contracts.  Additionally, Plaintiffs' citations to affidavits and interrogatories in support of their factual assertions generally fail to support those assertions or are wholly irrelevant.  *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("[W]here there are no[] citations or where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion." (quoting *Watt v. New York Botanical Garden*, No. 98-CV-1095 (BSJ), 2000 WL 193626, at *1 n.1 (S.D.N.Y. Feb. 16, 2000))).

[5]  Pedroza's contract ("Pedroza Agreement"), executed in 2007, appears at Bishop Decl., Ex. I (Dkt. 61-9).  Choquette's contract ("Choquette Agreement"), executed in 1997 and amended in 2000, appears at Bishop Decl., Exs. D & C (Dkt. 61-3 & 4).  The contracts are, in large part, identical and are referred to together as "Agreements" where appropriate.  Where the terms diverge in a manner material to this case, the Court notes those differences.

("Manuals"), Crash Manuals ("Crash"), Motor/Alldata Systems ("MAS"), and Shop

Management Systems ("MSM"), collectively "Products," to certain customers. *Id.* ¶ 19;

Agreements §1.

Several provisions in the Agreements are relevant to Plaintiffs' claims. Each Plaintiff is

authorized to sell Products to certain types of customers, designated as "Qualified Customers,"

within a limited geographic territory that is defined in each of the Agreements.[6] Agreements

§§2, 3; Def. 56.1 Stmt. ¶¶ 23, 25. Motor may change the authorized territory provided that any

change is "not [] arbitrary and [is] predicated on the level of sales of the Products compared to

sales of the Products in other territories in the same geographical area." Agreements § 3; Def.

56.1 Stmt. ¶ 24. Each Plaintiff's appointment as a distributor is "exclusive with respect to sales

of Manuals for direct personal sales calls on Qualified Customers in the Territory." Agreements

§ 1. This is the only exclusivity provided for in the Agreements. Def. 56.1 Stmt. ¶ 28. Motor

retains full rights to market and distribute all Products in Pedroza's territory, Pedroza Agreement

§ 2, and may market and distribute Crash and MAS in Choquette's territory, Choquette

Agreement § 2, "directly, or indirectly, to Qualified Customers and other prospects."

Agreements § 2; Def. 56.1 Stmt. ¶¶ 29-30. Each Agreement allows for partial termination "by

Motor . . . as to any Product if Motor discontinues [the] Product . . . ." Agreements § 8; Def.

56.1 Stmt. ¶ 39. Finally, commissions are mentioned only with respect to sales of MAS:

"Distributor shall be entitled to the then current renewal commission for renewals of MAS sold

by the Distributor while this Agreement is in effect." Agreements §6(e). The Agreements also

---

[6]     The Agreements state that the "Distributor is authorized to sell Products solely within the Territory
designated in Exhibit A attached hereto." Agreements § 3. The Choquette Agreement in the record includes an
exhibit that lists the zip codes that constitute Choquette's territory. *See* Choquette Agreement, Ex. A.. The Pedroza
Agreement in the record does not include the relevant exhibit, but the text of the Agreement makes clear that her
territory is also geographically defined. Pedroza Agreement § 3.

contain an integration clause, Agreements §11(c), a requirement that all modifications be made in writing signed by both parties, Agreements §11(b), and a New York choice of law clause, Agreements §11(a).[7]  Beyond the 2000 amendment to Choquette's contract, no written changes were made to either Agreement, and the terms in the Agreements are the only contractual terms between the parties.  Def. 56.1 Stmt. ¶¶ 12-13, 17-18.

At the time Pedroza signed her Agreement in 2007, Motor and Alldata, which developed and sold the MAS product to Motor, were parties to a contract that allowed Motor to sell MAS through 2016.  *Id.* ¶¶ 85-86.  In December 2013, Motor and Alldata mutually agreed to end their relationship.  *Id.* ¶ 87.  On December 18, 2013, Motor notified Plaintiffs, as well as other independent distributors, that they must stop selling MAS.  *Id.* ¶ 88.  Since then, Plaintiffs have not sold MAS.  *Id.* ¶ 93.  In an attempt to encourage distributors to continue working with Motor, Motor offered to pay its independent distributors, including Plaintiffs, a lump sum to offset the loss of MAS.  *Id.* ¶ 89.  Plaintiffs rejected the offer and attempted to renegotiate their Agreements.  *Id.* ¶¶ 90-91.  When those negotiations were unsuccessful, Plaintiffs filed this Complaint in the United States District Court for the District of Massachusetts.  Dkt. 1.  Upon Defendant's motion to transfer for improper venue, the case was transferred to the Southern District of New York on November 24, 2015.  Dkt. 21.

## DISCUSSION

### I.     Defendants' Motion for Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "Where the record

---

[7]     The parties agree that New York law applies to Plaintiffs' claims.  Def. 56.1 Stmt. ¶ 43.

taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (internal quotation marks omitted).

Courts "construe the facts in the light most favorable to the non-moving party and resolve all

ambiguities and draw all reasonable inferences against the movant." *Delaney v. Bank of Am.*

*Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (*per curiam*) (quoting *Aulicino v. N.Y.C. Dep't of*

*Homeless Servs.*, 580 F.3d 73, 79-80 (2d Cir. 2009)) (alteration omitted).

The nonmoving party, however, "must do more than simply show that there is some

metaphysical doubt as to the material facts," and "may not rely on conclusory allegations or

unsubstantiated speculation." *Jeffreys v. City of New York,* 426 F.3d 549, 554 (2d Cir. 2005)

(citations and internal quotation marks omitted). Rather, the nonmoving party must come

forward with "specific facts showing that there is a genuine issue for trial." *Sista v. CDC Ixis*

*North America, Inc.*, 445 F .3d 161, 169 (2d Cir. 2006) (citation omitted). "The plain language

of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### A. Plaintiffs' Breach of Contract Claim

To prove breach of contract under New York law, a plaintiff must prove "(1) a contract;

(2) performance of the contract by one party; (3) breach by the other party; and (4) damages."

*Terwilliger v. Terwilliger*, 206 F.3d 240, 245-46 (2d Cir. 2000). Plaintiffs bear the burden of

proof as to all elements of a breach of contract claim. *See Barton Grp., Inc. v. NCR Corp.*, 796

F. Supp. 2d 473, 498 (S.D.N.Y. 2011), *aff'd*, 476 F. App'x 275 (2d Cir. 2012) ("Under the

applicable New York law, a 'party asserting a breach of contract claim has the burden of proving

5

the material allegations in the complaint by a fair preponderance of the evidence.'" (quoting

*Raymond v. Marks*, 116 F.3d 466, 466 (2d Cir. 1997))). New York law requires that

unambiguous contractual terms be given their plain meaning. *See, e.g.*, *LaSalle Bank Nat'l Ass'n*

*v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005); *see also CIBC World Markets*

*Corp. v. TechTrader, Inc*., 183 F. Supp. 2d 605, 610–11 (S.D.N.Y. 2001) ("[W]hen parties set

down their agreement in a clear, complete document, their writing should as a rule be enforced

according to its terms." (quoting *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157 (1990))).

Plaintiffs appear to allege that Motor has breached their Agreements in three ways. First,

Plaintiffs allege that Motor "arbitrarily erod[ed] [Plaintiffs'] sales territories and accounts by

interfering with their customers in an attempt to lure them as a company account . . . ." Compl.

¶ 13. The Agreements, however, allow Motor to "change the Territory from time to time . . . ."

provided that such "[c]hanges . . . will not be arbitrary . . . ." Agreements § 3. "Territory," given

its plain meaning and viewed in light of each Agreement as a whole, refers exclusively to the

geographical area in which each Plaintiff can distribute Products (rather than to whom or the

quantity of Products Plaintiffs can sell).[8] Plaintiffs have presented no evidence to show that their

geographic territories have been changed, let alone that the Defendant acted arbitrarily.[9]

Plaintiffs "do not contend that the [Agreements] prohibit[] the Defendant from marketing,

selling, or distributing its products within the territory" but rather take issue with the effect that

Defendant's practices have had on Plaintiffs' businesses. Specifically, Plaintiffs believe that

Motor's marketing and sales activities within their geographic territories have hurt Plaintiffs'

---

[8]     Plaintiffs erroneously cite Section 3 of the Agreements as standing for the proposition that "MOTOR
covenanted with Choquette and Pedroza to not interfere with the distributor's customers . . . ." Compl. ¶ 10. There
is no such covenant in Section 3 or elsewhere in the Agreements.

[9]     Choquette's territory was changed once in 1978. Bishop Decl., Ex. B ("Choquette Tr.") 89:5-19 (Dkt. 61-
2).

businesses.  Choquette Interrog. ¶ 19 (Dkt. 69-5); Pedroza Interrog. ¶ 19 (Dkt. 69-6).  Plaintiffs

have presented no evidence that Motor is marketing or selling Products within Plaintiffs'

geographic territories, but even if they had presented such evidence, the Agreements expressly

allow Motor to market and distribute all Products in Pedroza's territory, Pedroza Agreement § 2,

and to market and distribute Crash and MAS in Choquette's territory, Choquette Agreement § 2.

Accordingly, the only sale Motor could make that would amount to a breach would be a sale of a

Manual to a "Qualified Customer" in Choquette's territory.  Choquette has not presented any

evidence that raises a genuine issue of material fact that such a sale has occurred.[10]

Second, Plaintiffs allege that Motor refused to "pay [Plaintiffs] direct or residual

commissions" for their sales of Motor products.  Compl. ¶ 14.  The Agreements provide for

commissions only with reference to MAS.  Agreements §6(e) ("Distributor shall be entitled to

the then current renewal commission for renewals of MAS sold by the Distributor while this

Agreement is in effect.").  Plaintiffs have nowhere alleged that they are owed commissions for

sales that were made before Alldata discontinued Motor's right to sell MAS.  Rather, it appears

that Plaintiffs are suing for the prospective commissions that they would have earned if Alldata

had not terminated its agreement with Motor as to MAS.[11]  But the plain language of the

Agreements allows for "partial termination as to any Product if Motor discontinues any

---

[10]     Choquette identified in discovery three sets of Manuals that he contends were improperly sold by Motor.
Choquette Tr. 58:2-61:19, 82:2-83:12.  Two of the sales were made to parties that were not Qualified Customers.
Def. 56.1 Stmt. ¶¶ 81-82.  Section 1 of the Agreements only grants Plaintiffs' the exclusive right to sell Manuals to
Qualified Customers in their territories.  *Id.* ¶ 27.  The third contested "sale" is a single Manual found in a library.
Choquette admitted, however, that he does not know who provided the book to the library or when the library
acquired the book.  Choquette Tr. 60:19-61:13.

[11]     Plaintiffs' depositions indicate that the sales they "lost" were prospective.  *See* Choquette Tr. 20:24-21:10;
Bishop Decl., Ex. H ("Pedroza Tr.") Tr. 27:11-29:11 (Dkt. 61-8).  Elsewhere, Plaintiffs state that Motor refused to
pay to them "all residual commissions *earned*" (emphasis added), but they do not identify any past sales for which
they were not compensated.  *See* Choquette Aff. ¶ 7 (Dkt. 67-3); Pedroza Aff. ¶ 7 (Dkt. 67-4); *see also* Pls. Opp. at
3.  Accordingly, Plaintiffs have not presented any evidence that creates a genuine dispute of material fact as to
whether Motor owes them commissions.

Product . . . ." Agreements § 8. Once Motor discontinued MAS, Plaintiffs did not make any

sales (renewals or otherwise), and they are thus not owed any commissions.

Finally, Plaintiffs allege that "Motor has wrongfully debited money from certain accounts

developed and funded by each of their independent sales performance under the Distributor

Agreement." Compl. ¶ 15. Because the Complaint does not identify what provision of the

Agreements Motor has allegedly breached by wrongfully debiting money from certain

accounts—nor can the Court identify a relevant provision—this allegation fails.[12]

For these reasons, summary judgment is granted as to Plaintiffs' breach of contract claim.

## B. Plaintiffs' Fraud Claim

Plaintiffs allege that Motor fraudulently induced them to enter into their contracts by

making certain misrepresentations that "a reasonably prudent person would rely upon . . . in

deciding whether to contract with the company." Compl. ¶ 22. Under New York law, to state a

claim for fraud in the inducement, "a plaintiff must demonstrate: (1) a misrepresentation or

omission of material fact; (2) which the defendant knew to be false; (3) which the defendant

made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and

(5) which caused injury to the plaintiff." *Podlin v. Ghermezian*, No. 13-CV-4117 (WHP), 2014

---

[12]     Neither Plaintiff has presented evidence sufficient to raise a genuine issue of material fact as to whether Motor wrongfully debited money from them. Although Pedroza alleges that she was not paid for expenses incurred in selling Motor products, Pedroza Interrog. ¶ 12, Motor was not contractually required to reimburse such expenses. Its failure to do so, therefore, cannot serve as the basis for a breach of contract claim. Choquette produced a list of payments he made to Motor that he believes were not credited to his account. *See* Bishop Decl., Ex. E. (Dkt. 61-5). Motor, however, has put forward evidence showing that it did credit Choquette's account for all payments he actually made. *See* Declaration of Kevin Carr (Dkt. 62) ¶¶ 26-33 & Ex. A (a spreadsheet showing all but one disputed transaction including those processed through its internal system; Choquette has presented no evidence showing that he actually made the payment for which he is "missing" credit); Def. 56.1 Stmt. ¶¶69-76. That Motor could have done more to inform its distributors of the intricacies of its internal crediting system, *see* Choquette Aff. ¶¶ 22-23, is immaterial in the absence of a contractual provision requiring them to do so.

WL 2601416, at *7 (S.D.N.Y. May 28, 2014) (citing *Wynn v. AC Rochester,* 273 F.3d 153, 156

(2d Cir. 2001)), *aff'd*, 601 F. App'x 31 (2d Cir. 2015).[13]

"Under New York law, a cause of action sounding in fraud cannot be maintained when

the only fraud charged relates to a breach of contract." *Ellington Credit Fund, Ltd. v. Select*

*Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 197 (S.D.N.Y. 2011) (citations omitted). In

certain circumstances, though, a fraud claim may arise out of the same set of facts as a breach of

contract claim. "Under New York law . . . [b]oth claims will lie when a plaintiff can show either

a legal duty distinct from the duty to perform under the contract, a fraudulent misrepresentation

collateral or extraneous to the contract, or special damages caused by the misrepresentation that

are unrecoverable as contract damages." *Vorcom Internet Servs., Inc. v. L & H Eng'g & Design*

*LLC*, No. 12-CV-2049 (VB), 2013 WL 335717, at *4 (S.D.N.Y. Jan. 9, 2013) (citing

*Bridgestone/Firestone v. Recovery Credit Servs.*, 98 F.3d 13, 20 (2d Cir. 1996)). None of those

exceptions applies here.

In assessing whether an alleged misrepresentation is collateral to a contract, New York

courts examine "whether the alleged misrepresentation was warrantied or not mentioned by the

contract; whether it was the misstatement of a present fact which induced entry into the contract;

whether it constituted the failure to perform a duty specified in the contract; and whether it is

generally duplicative of the breach of contract claim." *Great Earth Int'l Franchising Corp. v.*

*Milks Dev.*, 311 F. Supp. 2d 419, 428 (S.D.N.Y. 2004). Pedroza pointed in her deposition to

statements made by a former Motor employee that she would be paid for MAS renewals through

---

[13]     In addition to its other arguments, Defendant argues that the Court should grant summary judgment
because Plaintiffs' allegations are not pled with enough specificity to meet Federal Rule of Civil Procedure 9(b)'s
heightened pleading standard to allege fraud. Def. Mem. at 15 n.9. The Court agrees that the fraud claims as
alleged in the Complaint did not satisfy Rule 9(b). Even with the benefit of discovery, however, Plaintiffs have
failed to come forward with any evidence of fraud, rendering summary judgment appropriate.

2016. Pedroza Tr. 34:25-36:8. The Court cannot consider these statements, which are not mentioned in the Complaint. *See, e.g.*, *Maxim Grp., LLC v. Life Partners Holdings, Inc.*, 690 F. Supp. 2d 293, 308 (S.D.N.Y. 2010) (holding that the Court should disregard a revised theory of fraudulent inducement "because a party cannot amend its pleading through an opposition brief."). Even if the Court could consider these statements, they cannot serve as the basis for a fraud in the inducement claim because Pedroza has not demonstrated that they were "false 'representation[s] of present fact.'" *Stewart v. Jackson & Nash*, 976 F.2d 86, 89 (2d Cir. 1992) (quoting *Deerfield Commc'ns Corp. v. Chesebrough-Pond's, Inc.*, 502 N.E.2d 1003, 1004 (N.Y. 1986). Pedroza stated she was told that she would either be paid for all MAS renewals through 2016 or that Alldata would "buy that block of business back plus two years," if the contract between Motor and Alldata was terminated *See* Pedroza Tr. 34:25-36:8.[14] The former representation, if made, was not false when made—the Alldata agreement in place at the time ran through 2016, Def. 56.1 Stmt. ¶ 86, and Pedroza's contract provided that she would be paid for all MAS renewals during the term of her distributorship contract. As to the latter statement, Pedroza has adduced no evidence that the employee made such a statement "with a preconceived . . . intention of not performing," *Stewart*, 976 F.2d at 89 (emphasis omitted) (citation omitted), or with knowledge that these outcomes "[could] not be achieved," *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994).

Finally, there is nothing in the record indicating that Motor owed a separate legal duty to Plaintiffs or that Plaintiffs are seeking the sort of "special damages" unrecoverable in contract. "Parties to a commercial contract do not ordinarily bear a fiduciary relationship to one another

---

[14]     Pedroza testified that she was told that in the event of a termination, Alldata would "buy back" the business from Motor. *See* Pedroza Tr. 36:6-8. She did not testify, however, that she was ever told that Motor would compensate her if such a termination occurred.

unless they specifically so agree." *Maxim Grp.*, 690 F. Supp. 2d at 307 (citation omitted); *see also Ne. Gen. Corp. v. Wellington Advert., Inc.*, 624 N.E.2d 129, 131 (N.Y. 1993) ("If the [contracting] parties . . . do not create their own relationship of higher trust, courts should not ordinarily . . . fashion the stricter duty for them."). Indeed, the parties here specifically disclaimed any special relationship. Agreements § 5 ("[T]he sole relationship between the parties is the sale of Products by Motor to Distributor and by Distributor to Qualified Customers for and on behalf of Motor and [] no other relationship exists."). As for damages, Plaintiffs seek the profits from their distribution relationships with Motor that they claim they were promised. Such damages alone cannot sustain a fraud claim. *See Ostano Commerzanstalt v. Telewide Sys., Inc.*, 794 F.2d 763, 766 (2d Cir. 1986) ("[T]he law of New York is plain that out-of-pocket rather than benefit-of-the-bargain damages are awarded for fraud so that all elements of profit are excluded.") (citation and internal quotation marks omitted).[15]

For these reasons, summary judgment is granted as to Plaintiffs' fraud in the inducement claim.

### C. Plaintiffs' Tortious Interference with Business Relations Claim

"To state a claim for tortious interference with business relations, a plaintiff must adequately allege that: '(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship.'" *Glob. Packaging Servs., LLC v. Glob. Printing & Packaging*, No. 15-CV-7747 (NSR), 2017 WL 1232731, at *4 (S.D.N.Y. Mar. 31, 2017) (quoting *Valley Lane Indus., Co. v.*

---

[15]     Choquette claims that he is owed $4.4 million in "emotional pain and suffering" but made clear in his deposition that such damages are based entirely on conjecture. Choquette Tr. 96:1-97:3.

*Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x 102, 105 (2d Cir. 2012) (summary order)).

Plaintiffs argue that Motor acted "for a wrongful purpose" or used "improper means" because it "withheld" MAS commissions "in an effort to coerce and manipulate them into executing a new distributor agreement . . . ." Pls. Opp. at 7. These alleged actions, however, cannot serve as the basis for a tortious interference claim because Plaintiffs have not alleged that Motor interfered with Plaintiffs' business relationship with a third party; they have alleged only that Motor was coercive in its business relationship vis-à-vis Plaintiffs. *Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1104 (N.Y. 2004) ("[Tortious interference is] by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship.").

To the extent Plaintiffs intend to allege that Motor has interfered with Plaintiffs' business relations with third parties because Motor has allegedly interfered with Plaintiffs' customers, Plaintiffs' tortious interference claim still fails. As a general rule, tortious interference claims that are duplicative of contract claims are precluded. *See, e.g.*, *Uitz v. Lustigman Firm, P.C.*, No. 13-CV-6040 (RMB), 2014 WL 3767056, at *2 (S.D.N.Y. July 28, 2014) ("[A] simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." (quoting *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987)). As Defendant correctly notes, these claims are duplicative of Plaintiffs' contract claims because they just reassert that Motor interfered with Plaintiffs' customers by soliciting their business. Plaintiffs do not claim that Defendant breached a duty that "spring[s] from circumstances extraneous to and not constituting elements of, the [parties'] contract." *Clark-Fitzpatrick*, 516 N.E.2d at 194; *see also Uitz*, 2014 WL 3767056, at *3 (dismissing tortious

interference claim that relied on same facts as contract claim, where plaintiff did not identify any independent duty).

In addition, Plaintiffs have not raised a genuine issue of material fact as to whether Motor has "acted for a wrongful purpose or used dishonest, unfair, or improper means . . . ." *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015) (citation omitted).  To satisfy this element of a tortious interference claim, "a defendant's conduct must amount to a crime or an independent tort." *Friedman v. Coldwater Creek, Inc.,* 321 F. App'x 58, 60 (2d Cir. 2009) (quoting *Carvel*, 818 N.E.2d at 1103).  When, in contrast, "a defendant has acted with a permissible purpose, such as normal economic self-interest," wrongful means cannot be shown, "even if the defendant was indifferent to the plaintiff's fate." *16 Casa Duse*, 791 F.3d at 262 (citations and internal quotation marks omitted).  As discussed above, Plaintiffs have presented no evidence to show that Motor has withheld commissions for past sales.  Even if Motor had done so, that would not amount to an independent tort but would be merely a breach of contract; Plaintiffs are only entitled to commissions because of the parties' contractual relationship.

While occasionally economic pressure brought by a party to a contract can constitute a tort, *Carvel*, 818 N.E.2d at 1105, in order to qualify the pressure must be "extreme" to the point of being "wrongful."  In this case, Motor offered Plaintiffs a lump sum payment to acknowledge the sudden discontinuance of MAS and to encourage Plaintiffs to continue as independent distributors.  There is nothing about such an offer that is either extreme or wrongful.  *Id.*

The Court therefore grants summary judgment as to Plaintiffs' tortious interference claim.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED.

The Clerk of the Court is respectfully directed to terminate docket entry 58 and to close the case.

**SO ORDERED.**

**Date: August 2, 2017**　　　　　　　　　**VALERIE CAPRONI**
**　　　New York, NY**　　　　　　　　　**United States District Judge**